[Docket No. 4]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| MAGDA DIAZ,<br><br>    Plaintiff,<br><br>v.<br><br>SUNRUN, INC., *et al.*,<br><br>    Defendants. | Civil A. No. 24-11462<br>(RMB/EAP)<br><br>**OPINION** |

**APPEARANCES:**

Noel Rivers, Esq.
RIVERS LAW FIRM LLC
77 Hudson Street
Hackensack, New Jersey 07601

    *Attorney for Plaintiff Magda Diaz*

Justin Miklacki, Esq.
GORDON & REES SCULLY MANSUKHANI, LLP
290 W. Mount Pleasant Avenue
Suite 3310
Livingston, New Jersey 07039

    *Attorney for Defendants Sunrun, Inc. and Sunrun Installation Services, Inc.*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motion to Compel Arbitration [Motion (Docket No. 4); Defs.' Br. (Docket No. 4-1)] filed by Defendants Sunrun Inc. and Sunrun Installation Services Inc. (together, "Sunrun" or the "Defendants"). Plaintiff Magda Diaz ("Diaz" or the "Plaintiff") has opposed the Motion. [Pl.'s Opp'n (Docket No. 5).] Sunrun submitted a reply brief in further support of the Motion. [Defs.' Reply (Docket No. 6).] The Court has considered the parties' submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' Motion will be **DENIED** without prejudice. The parties shall engage in limited discovery on the issue of arbitrability pursuant to an expedited schedule to be determined before United States Magistrate Judge Elizabeth A. Pascal. Following the conclusion of the expedited discovery, Defendants may submit a renewed motion to compel arbitration pursuant to a summary judgment standard.

## I. FACTUAL BACKGROUND

Diaz and her husband Wilman Tacuri ("Tacuri") own and reside at property located in Clementon, New Jersey.[1] [Compl. ¶¶ 9, 18 (Docket No. 1-2).] On August 13, 2022, a Sunrun door-to-door salesperson, Zohab Siddiquei ("Siddiquei"), came to Diaz's home to solicit her to have solar panels installed on her house. [*Id.* ¶ 11.] Diaz and Tacuri's native language is Spanish; neither is fluent in English. [*Id.* ¶ 14; Tacuri

---

[1] These facts are taken from Plaintiff's Complaint and Certifications of Magda Diaz [Docket No. 5-4] and Wilman Tacuri [Docket No. 5-11] submitted in opposition to Defendants' motion and are included as background information only.

Cert. ¶ 5.] Diaz believes that English is not Siddiquei's first language either. [Diaz Cert. ¶ 10.] Nonetheless, their entire conversation took place in English and Diaz's adult daughter, on whom she often relies for translation, was not present. [Compl. ¶¶ 14–15, 41.] Tacuri was at the property during his wife's interaction with Siddiquei, but he was not involved in the discussion and did not sign any documents. [Compl. ¶ 18; Diaz Cert. ¶ 16; Tacuri Cert. ¶¶ 4, 10.]

During their interaction, Siddiquei purportedly told Diaz that the solar panels were free and, as a result, no contract was needed. [Compl. ¶ 12; Diaz Cert. ¶¶ 6–7.] He also informed Diaz that her electrical costs would be significantly reduced by having the solar panels installed. [Compl. ¶ 12; Diaz Cert. ¶ 7.] During this conversation, Siddiquei carried a tablet with him, but Diaz was generally not permitted to view or touch it. [Compl. ¶¶ 13, 16–17, 23–24.] Before approving Diaz for the solar panels, Siddiquei requested that she sign a one-page document to see if her property qualified under a government rebate program. [Diaz Cert. ¶ 24.] Diaz was initially reluctant, but Siddiquei assured her that her credit report would not be pulled as part of the process. [*Id.* ¶ 25.] Diaz agreed to sign this one-page document and physically signed her signature using her finger or a stylus on Siddiquei's tablet. [*Id.* ¶ 26.] She did not view, sign, or initial any other documents or agreements during this meeting. [*Id.* ¶¶ 22–23, 27, 37; Compl. ¶¶ 13, 16, 22, 25–26.]

Siddiquei advised Diaz that before the solar panels could be installed, she would need to answer a few questions over the phone with a Sunrun representative, which he told Diaz how to answer. [Diaz Cert. ¶ 50.] The Sunrun representative who called

3

her only spoke to her in English and Diaz had difficulty following the conversation. [*Id.* ¶ 51.]

Shortly after Diaz's meeting with Siddiquei on August 13, 2022, at 2:27 p.m., Sunrun emailed her in English requesting that she review and sign an attached Sunrun BrightSave Power Purchase Agreement (the "PPA"). [Docket No. 5-7.] The PPA is a 25-year contract, over forty pages long, and in English. [Docket No. 5-5.] Diaz avers that she did not see the email at the time and only discovered it—unread—after her attorney suggested she perform an email search. [Diaz Cert. ¶ 31.] Although the email enclosed the PPA for her signature, it was already digitally signed with a signature time stamp of 11:30 a.m., three hours before it was sent. [*Id.* ¶ 32.] Diaz claims that she did not sign or initial any agreement, including the PPA, and that Siddiquei or another Sunrun representative forged her signature without her knowledge or consent.[2] [*Id.* ¶¶ 4, 13, 22, 28–29, 33–43.] The PPA also bore an electronic signature purporting to belong to Tacuri, which is also allegedly forged. [*Id.* ¶ 46; Tacuri Cert. ¶ 10.] The data associated with the PPA indicates that it was sent, viewed, and signed in less than three minutes. [Diaz Cert. ¶ 35; Compl. ¶¶ 35–36.] Diaz contends that it is not possible for her to have reviewed a forty-page

---

[2] The Court notes that Sunrun is no stranger to allegations of forgery and deceptive sales practices. In this District alone, Sunrun has been sued on numerous occasions based upon strikingly similar allegations of forged customer signatures. *See, e.g.*, *Valerio v. Sunrun Inc.*, D.N.J. No. 2:25-cv-3099-WJM-JRA; *Pereira v. Sunrun, Inc.*, D.N.J. No. 1:24-cv-6551-RMB-AMD; *Tighe v. Sunrun, Inc.*, D.N.J. No. 2:22-cv-6955-CCC-LDW; *Baldassano v. Sunrun Inc*, D.N.J. No. 3:22-cv-02072-ZNQ-LHG.

contract in English and signed it in such a short period of time given that she is not fluent in English. [Diaz Cert. ¶ 35; Compl. ¶ 37.] After seeing the email, Diaz called Sunrun and advised multiple representatives, including a manager, that she did not sign the PPA and that she was told the panels were free. [Diaz Cert. ¶ 19.] At some point thereafter, Sunrun installed thirty solar panels and two inverters on Diaz's roof. [Compl. ¶¶ 50, 52.]

Since then, Diaz has received invoices from both Sunrun and her electric company. [*Id.* ¶ 20; Compl. ¶ 53.] Following the installation of the panels, Diaz's house has experienced significant water damage, leading to the development of mold and mildew in her home. [Compl. ¶ 54; Diaz Cert. ¶ 55.] Diaz and her family members have become ill and sought medical treatment relating to their exposure to the mold and mildew. [Compl. ¶¶ 55–56.]

The PPA contains an arbitration clause, which is at the center of the parties' present dispute. The arbitration clause provides, in relevant part:

> ARBITRATION. IF THE PARTIES CANNOT RESOLVE THE DISPUTE INFORMALLY, THE DISPUTE, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, WILL BE RESOLVED BY BINDING ARBITRATION BEFORE ONE ARBITRATOR.
>
> ARBITRATION MEANS YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND ALL DISPUTES SHALL BE DECIDED BY AN ARBITRATOR. THIS AGREEMENT TO ARBITRATE DISPUTES IS GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"). THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS STREAMLINED ARBITRATION RULES & PROCEDURES. THE ARBITRATION WILL BE OVERSEEN BY THE JAMS OFFICE NEAREST TO THE HOME. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING

> JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION. THE ARBITRATOR MAY, IN THE AWARD, ALLOCATE ALL OR PART OF THE COSTS OF THE ARBITRATION, INCLUDING THE FEES OF THE ARBITRATOR AND THE REASONABLE ATTORNEY FEES OF THE PREVAILING PARTY.

[PPA § G(11)(b).]

## II. PROCEDURAL HISTORY

Based upon these facts, Diaz filed suit against Defendants in the Superior Court of New Jersey, Law Division, Camden County, on October 11, 2024. [Compl.] The Complaint sets forth eleven counts against Sunrun alleging violations of the New Jersey Consumer Fraud Act; the New Jersey Home Improvement Practices Act; the Truth-in-Lending Act; the New Jersey Door-to-Door Retail Installment Sales Act; the New Jersey Truth in Consumer Contract, Warranty and Notice Act; the Magnuson-Moss Warranty Improvement Act; and various common law fraud, contract, negligence, and unjust enrichment claims. [Compl. at 8–26.] Sunrun removed the case to federal court on the basis of diversity jurisdiction.[3] [Notice of Removal ¶¶ 5–11 (Docket No. 1).] Sunrun subsequently filed the instant Motion to Compel Arbitration. The briefing is now complete, and the motion is ripe for decision.

---

[3] It appears that the Court may also have federal question jurisdiction over this action in light of the federal causes of action set forth in Counts 3 and 11 of the Complaint.

6

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). This presumption in favor of arbitration, however, "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Indeed, courts, rather than arbitrators, must fulfill the "gatekeeping function" in this respect. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (citing *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 107 (3d Cir. 2000)). Because arbitration is a matter of contract, if no such agreement exists, courts cannot mandate that the parties arbitrate. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219–20 (3d Cir. 2014) (citing *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)); *see also MZM*, 974 F.3d at 401 ("it can hardly be said that contracting parties clearly and unmistakably agreed to have an arbitrator decide the existence of an arbitration agreement when one of the parties has put the existence of that very agreement in dispute.").

Thus, in deciding a motion to compel arbitration, a court must first determine (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the dispute falls within the agreement's scope. *Flintkote*, 769 F.3d at 220 (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's, Lond.*, 584 F.3d 513, 527 (3d Cir. 2009)). "[W]hen the

very existence of such an agreement is disputed," any motion to compel arbitration should be denied until the court "resolves the threshold question of whether the arbitration agreement exists." *Sandvik*, 220 F.3d at 112.

In accordance with these principles, the standard for the resolution of a motion to compel arbitration depends on the facial clarity of arbitrability. "[W]hen it is apparent, based on the 'face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"[4] *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be

---

[4] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief may be granted. "A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). Courts will dismiss a complaint if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question'" under a Rule 56 summary judgment standard.[5]  *Id.* (alteration in original) (quoting *Somerset*, 832 F. Supp. 2d at 482).

## IV. DISCUSSION

Sunrun brazenly claims that "there is no question that the Arbitration Agreement is valid, enforceable, and irrevocable." [Defs.' Br. at 9.] But that puts the cart before the horse. Before compelling arbitration, the Court must first determine whether a valid agreement to arbitrate exists. *Flintkote*, 769 F.3d at 220. Sunrun's statement presupposes that the Court agrees with it on the first step of its analysis. At this stage, the Court does not.[6]

---

[5]  Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

[6]  What's more, Defendants essentially seek to prematurely claim victory on the merits of Plaintiff's case. Plaintiff's claims are premised on her allegations that Sunrun forged her signature on the PPA. To find now that there is a valid arbitration agreement would effectively gut the bulk of Plaintiff's case by nullifying the allegations of fraud, forgery, and deception. The Court will not do so.

9

### A. <u>Arbitrability</u>

The Court first addresses Defendants' threshold argument that arbitrability should be decided by the arbitrator, not this Court, in light of the PPA's delegation clause. The PPA contains a clause delegating the authority to determine the scope and applicability of the agreement to arbitrate to the arbitrator. [PPA § G(11)(b).] In light of this clause, Sunrun contends that the arbitrator must address whether the claims are arbitrable in the first instance. [Defs.' Br. 9–11.]

But Sunrun misunderstands the law. It is true that, if the parties agreed to submit the arbitrability question to an arbitrator, the arbitrator decides. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). However, "unless the parties clearly and unmistakably agreed to arbitrate questions of contract formation in a contract whose formation is not at issue, those gateway questions are for the courts to decide." *MZM*, 974 F.3d at 402. Binding Third Circuit precedent is clear that "under section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *Id.* Where a party, like Diaz here, "specifically challenges the validity of the agreement to arbitrate," the parties need not need take their disputes, including those about the broader contract's validity, directly to the arbitrator. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019). Instead, the FAA "'*affirmatively requires*' a court [rather than an arbitrator] to decide questions about the formation or existence of an arbitration agreement, namely the element of mutual consent." *MZM*, 974 F.3d at 397–98

(quoting *Sandvik*, 220 F.3d at 108–09) (emphasis added). "[T]his threshold determination is 'a necessary prerequisite' in fulfilling the court's gatekeeping function. Otherwise, arbitrators would be allowed 'to determine their own jurisdiction, something that is not permitted in the federal jurisprudence of arbitration[.]'" *Id.* at 398 (quoting *Sandvik*, 220 F.3d at 107, 111).

Here, Diaz has clearly challenged the validity of the arbitration agreement itself. Because the validity of the arbitration agreement and the existence of mutual assent is disputed, the issue of arbitrability is properly before this Court.

### B. **The Validity of the PPA and Arbitration Agreement**

Having concluded that the Court is the proper arbiter at this juncture, the Court turns to the validity of the arbitration agreement. Put plainly, it is far from apparent on the face of the Complaint that Plaintiff's claims are subject to a valid arbitration agreement. Indeed, "the very existence of" of a valid arbitration agreement is not only "disputed," it is at the very heart of Plaintiff's claims. *See Sandvik*, 220 F.3d at 112. Plaintiff alleges throughout her Complaint and avers in her sworn certification that she was never presented with or informed of the PPA or its arbitration clause and, to the contrary, was told that no contract was necessary at all. [Diaz Cert. ¶¶ 8, 12–14, 43; Compl ¶¶ 12, 13, 16.] She vehemently denies signing or initialing the PPA or the arbitration clause and maintains that her signature was forged. [Diaz Cert. ¶¶ 34, 36–39; Compl. ¶¶ 21, 24–29.] Sunrun, on the other hand, argues that the signatures on the PPA speak for themselves and points to the different IP addresses associated

with Plaintiff's purported signatures and Siddiquei's signatures as evidence that they were signed on different devices. [Defs.' Reply at 3–4.]

The record at this stage is rife with genuine disputes of material fact as to the existence of mutual assent and a valid arbitration agreement. "Like in *Guidotti*, there is a genuine dispute of material fact whether a meeting of the minds occurred on the agreement to arbitrate." *DeAngelis v. CSI Int'l, Inc.*, No. 23-03178, 2024 WL 4903679, at *7 (D.N.J. Nov. 26, 2024) (citing *Guidotti*, 716 F.3d at 767, 780). Accordingly, the Court must deny the instant motion, permit limited discovery, and, following the conclusion of said discovery, resolve a renewed motion to compel arbitration under a summary judgment standard. *Guidotti*, 716 F.3d at 776, 780–81 (remanding case to the district court for further discovery after finding that "a genuine issue of material fact remains regarding the agreement to arbitrate"); *DeAngelis*, 2024 WL 4903679, at *7 (finding factual discovery appropriate "because Plaintiff dispute[d] the very validity of the Arbitration Agreement") (collecting cases); *see also Baldassano v. Sunrun Inc.*, No. 22-02072 (FLW) (D.N.J. Nov. 8, 2022) (denying Sunrun's motion to compel without prejudice and ordering limited discovery on the issue of arbitrability where the parties disputed "whether the referenced arbitration agreement was ever viewed, acknowledged, or signed by Plaintiffs").

Accordingly, the Court will deny Defendants' motion without prejudice. The parties shall engage in limited discovery on the issue of the validity of the arbitration agreement under the supervision of United States Magistrate Judge Elizabeth A. Pascal. At the close of this limited discovery, Defendants may renew their motion to

compel arbitration, which the Court will resolve under the summary judgment standard.

## V. CONCLUSION

For the reasons set forth herein, Defendants' motion to compel arbitration is **DENIED WITHOUT PREJUDICE**.

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: July 18, 2025